**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

**v.**

**Lula DAVIDSON et vir, Appellees.**

**No. 15761.**

Court of Civil Appeals of Texas.

Fort Worth.

Oct. 26, 1956.

Rehearing Denied Nov. 23, 1956.

Burford, Ryburn, Hincks & Ford, Logan Ford and Clarence A. Guittard, Dallas, for appellant.

R. B. Gambill, Denton, Yarborough, Yarborough & Johnson and W. E. Johnson, Dallas, for appellees.

BOYD, Justice.

From a judgment in favor of appellees Lula Davidson and husband, Otis Davidson, for workmen's compensation for Mrs. Davidson for total and permanent disability, payable in a lump sum, appellant Texas Employers' Insurance Association prosecutes this appeal.

The case was tried by the court without a jury. No contention is here made that the evidence did not support the findings that Mrs. Davidson is totally and permanently disabled and that liability should be redeemed in a lump sum. Appellant's only contentions are that the evidence does not support the findings that Mrs. Davidson was injured in the course of her employment and that her average weekly wage was $43.85, as found by the court.

Mrs. Davidson was employed by Russell-Newman Manufacturing Company as a power sewing machine operator. She was paid by the hour. She was not paid for the fifty minutes from 12:00 o'clock noon to 12:50 P.M. That was the lunch period. Some of the employees brought their lunch and ate it on the premises of the employer. Some went to cafes in town and some went home for lunch. Mrs. Davidson sometimes went to a cafe for lunch, and sometimes went home. On the day of the accident giving rise to this suit, she brought her lunch and ate at her machine. This procedure was allowed by her employer. Those who ate lunch in the room where Mrs. Davidson worked were directed to put their waste in a barrel in the room.

On the occasion of her injuries, Mrs. Davidson sat at her machine about five minutes after the 12:00 o'clock whistle blew, arranging some material with which she expected to begin her work at 12:50. She was not required to do this during the lunch period, and was not paid for that time. Then she ate her lunch. This took about ten minutes. After finishing her meal, she arose from her chair and started toward the waste barrel in order to deposit her waste therein. Before reaching the barrel she stepped on a piece of paper which was on the floor, and the paper caused her foot to slip and that caused her to fall. Her fall resulted in the injuries complained of. The piece of paper she stepped on came from the binding of materials which had been brought into the room to be used by the employees in their work.

Appellant contends that since it was conclusively shown that Mrs. Davidson's injuries were sustained during the lunch hour, for which time she drew no pay, she was not engaged in the furtherance of her employer's business, and that therefore the case does not come under the terms of the Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq. Its argument is that before an injury is compensable it must have occurred while the employee was engaged in or about the furtherance of his employer's business, and that the injury must be of such kind and character as had to do with and originated in the employer's business, that is, that there must be a causal relation between the conditions of the work and the injury; and that these prerequisites are not met by proof that the employee was "on her own time," although on the employer's premises and at her place of work when the accident occurred.

Appellant insists that eating her lunch and carrying her waste to the barrel were

incidents personal to Mrs. Davidson, and that she was not then engaged in the furtherance of her employer's business. The case of McKim v. Commercial Standard Ins. Co., Tex.Civ.App., 179 S.W.2d 357, is cited by appellant as authority for its position. We do not think that case is controlling here. Mrs. McKim was employed as a hatmaker on the second floor of her employer's establishment. She was paid by the hour. She was not paid for the lunch period. During the lunch period she went downstairs to the selling department of her employer's business. While engaged in the process of buying a hat, she slipped and fell and sustained the injury involved in the suit. The court held that Mrs. McKim had stepped out of her role as an employee and had assumed the role of a customer at the time of her injury. While she was still on the employer's premises, she was not in the manufacturing department where she worked, but in the selling department on another floor. About the only facts in the McKim case similar to those in the case at bar are that Mrs. McKim was paid by the hour, was hurt during the lunch period, and was hurt while on her employer's premises. They are dissimilar in that in our case the employee was at her place of work when she was injured, and her role as an employee had not changed to that of a customer. Mrs. McKim's desire to buy a hat caused her to be in the selling department of her employer's establishment, and not in the department where she worked as a hatmaker.

Appellant cites many cases as upholding its view that Mrs. Davidson did not receive her injuries in the course of her employment; and we have considered them all, but do not think they are decisive of the exact point presented by this record.

■ Whether an employee was in the course of his employment when he received an injury is ordinarily a question of fact. Federal Underwriters Exchange v. Lehers, 132 Tex. 140, 120 S.W.2d 791; Liberty Mut.

Ins. Co. v. Nelson, 142 Tex. 370, 178 S.W.2d 514. Each case must be determined upon its own peculiar facts. Texas Employers' Ins. Ass'n v. Anderson, Tex.Civ.App., 125 S.W. 2d 674, writ refused.

We have seen no Texas case with such a fact situation as would make the holding controlling here. Appellee cites, among many others, such cases as Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S.W. 72; Kirby Lumber Co. v. Scurlock, 112 Tex. 115, 246 S.W. 76; General Ins. Corp. v. Wickersham, Tex.Civ.App., 235 S.W.2d 215; Employers Mut. Liability Ins. Co. of Wisconsin v. Konvicka, 5 Cir., 197 F.2d 691; and Indemnity Ins. Co. of North America v. Wright, Tex.Civ.App., 69 S.W.2d 438. All of these cases may be distinguished from ours on the facts; and, therefore, while the decisions of the courts are persuasive, we do not think they are determinative of the question to be decided here.

■ But after considering all the authorities bearing upon the point from this and other jurisdictions, which have been found by the investigation of counsel and our research, we have reached the conclusion that the evidence supports the finding that Mrs. Davidson's injuries were sustained in the course of her employment, within the meaning of the Workmen's Compensation Act.

■ The Act must be construed liberally " 'to properly care for those injured in the industries of this State.' " McKim v. Commercial Standard Ins. Co., Tex.Civ. App., 179 S.W.2d 357, 359. And it is not a necessary prerequisite to recovery that the injury occur during the hours of actual service, or that the employee be in the discharge of any specific duty incident to his employment. Texas Employers' Ins. Ass'n v. Anderson, supra; Liberty Mut. Ins. Co. v. Nelson, supra. As was said in Texas Employers' Ins. Ass'n v. Anderson, 125 S. W.2d 674, 677:

"In administering the Workmen's Compensation Law, doubtless the greatest difficulty is encountered in determining whether, in a particular case, the employe sustained personal injuries in the course of his employment. We are without a formula except the statute, which being phrased in general terms, each case necessarily must be determined on its own peculiar facts, and as a question of fact. As we have just seen, it was not a necessary prerequisite to a recovery by appellees that deceased should have sustained the injury causing death while on the premises of his employer, nor was it necessary that the accident should have occurred during the hours of actual service, nor that the deceased, at the time of being injured, should have been engaged in the discharge of any specific duty incident to his employment. The statute (Art. 8309, § 1, subd. 4, Workmen's Compensation Law), after excepting injuries caused by an act of God, an act of a third person, those received while intoxicated and those wilfully self-inflicted reads: 'but shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employé while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere.'

"Although the meaning of the statute is somewhat elusive, yet the comprehensive terms employed indicate that it has an expansive meaning and that, without regard to where, when or how the employe is injured, compensation is due, provided the injury results from a risk or hazard that the employe assumes in order to perform his master's task."

In many cases, the Act has been held to cover injuries received while the employee was going to or returning from his place of work, when he was doing nothing other than that toward the furtherance of his employer's business.

A case remarkably similar to ours in essential respects is Thomas v. Proctor & Gamble Mfg. Co., 104 Kan. 432, 179 P. 372, 6 A.L.R. 1145. There a seventeen year old girl was employed by the hour. Her lunch time was thirty minutes. She did not receive pay for that thirty minutes. Her custom was to take her lunch and eat it on her employer's premises, in the room where she worked. This was allowed but not required by her employer. She was at liberty to go where she wished during the lunch period. She was hurt after she ate her lunch and before time for resuming work. She and other girls who worked with her were in the habit of amusing themselves during part of the lunch period by riding on a small truck used in their department for hauling boxes. The evidence was conflicting as to whether any responsible representative of the employer authorized the girls to play with the truck, but no representative had made known to them any objections to such conduct. On the day of the accident, one girl was drawing the truck and the plaintiff and another girl were kneeling on it. While the truck was turning a corner, the plaintiff fell off the truck, the fall causing her injuries. The court, in a thorough opinion, reviewed many authorities and concluded that the injured girl was entitled to compensation, holding that her injury occurred in the course of her employment and arose out of her employment.

In Haller v. City of Lansing, 195 Mich. 753, 162 N.W. 335, 337, L.R.A.1917E, 324, it was said: "As directly applied to the noon intermission, it is a long and well-settled rule that the service tie, or contractual relations and obligations between master and servant, is not broken by such suspension of all activities directly beneficial to the employer."

As shown in 6 A.L.R., Annotation, p. 1151, in the case of Blovelt v. Sawyer, 6 W.C.C. (Eng.) 18, a bricklayer, who was paid according to the number of hours he actually worked, sat down at the noon hour at a place on his employer's premises and near a wall he had been engaged in building, and, while there eating his lunch, was injured by the wall falling upon him. The workmen usually went away for lunch, but they were allowed to spend the noon hour upon the premises if they so desired. The court said that even though the employee was paid by the hour, the intermission for lunch could be regarded "'as part of the time allowed for some purpose ancillary to the work to be done, as, for example, eating the necessary food; it would be taking a strained view to say that the pause in the middle of the work for dinner was a break in the employment.'"

"'The relation of master and servant, in so far as it involves the obligation of master to protect the servant, is not suspended during the noon hour, where the master expressly, or by fair implication, invites his servants to remain on the premises in the immediate vicinity of the work.'" Bradbury, Workmen's Comp., 3d Ed., 524, as reported in Thomas v. Proctor & Gamble Mfg. Co., 104 Kan. 432, 179 P. 374, 6 A.L.R. 1149. See also Milwaukee Western Fuel Co. v. Industrial Commission, 159 Wis. 635, 150 N.W. 998.

We believe the evidence sustained the trial court's finding that Mrs. Davidson received her injuries in the course of her employment and that they arose out of her employment.

■ Also, we are inclined to disagree with appellant's other contention that there is no evidence to support the court's finding "that plaintiff's average weekly wage was $43.85." Actually, the court found that Mrs. Davidson's average weekly wage "forming the basis for compensation to be awarded herein is the sum of $43.85." Mrs. Davidson worked 246 days during the year preceding her injury. She received ninety-five cents per hour. No employee of the same class worked substantially the whole of the year. Therefore, it must be presumed that the court, as contemplated by subd. 3, of Sec. 1, Art. 8309, R.C.S., Vernon's Ann.Civ.St. art. 8309, § 1, subd. 3, computed her wage rate in a manner which seemed to him just and fair to both parties.

Mrs. Davidson's normal work week was five days, eight hours per day, although during rush periods she worked nine hours per day and six days per week. She received ninety-five cents per hour at the time she was injured. A few months before that time she was being paid ninety cents per hour. Her employer testified that the employees were paid according to the length of their service; and that length of service increased their pay.

■ "The purpose of the Workmen's Compensation Act is designed to compensate an injured employee, not merely for the loss of earnings, but for loss of earning capacity, at a wage rate based on his capacity to earn when employed on a full time basis. [Authorities cited.]" Traders & General Ins. Co. v. Wilson, Tex.Civ.App., 147 S.W.2d 866, 869.

■ While it has been said that subd. 3 of Sec. 1, Art. 8309, should be construed in light of subds. 1 and 2, Petroleum Casualty Co. v. Williams, Tex.Com.App., 15 S.W.2d 553, we know of no authority holding that the court has no discretion in finding what wage rate would be just and fair to both parties. We think he had broad discretionary powers in considering matters bearing on the question to be determined. Traders & General Ins. Co. v. O'Quinn, Tex.Civ.App., 111 S.W.2d 859, writ refused.

Believing that the evidence supports the judgment, it is affirmed.