TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,

v.

Betty Jean PRASEK, Appellee.

No. 1307.

Court of Civil Appeals of Texas, Corpus Christi.

June 26, 1978.

Rehearing Denied Aug. 29, 1978.

Thomas H. Crofts, Jr., Groce, Locke & Hebdon, San Antonio, for appellant.

Robert B. Thornton, Robert R. Biechlin, Jr., Thornton & Summers, San Antonio, for appellee.

## OPINION

BISSETT, Justice.

This case involves death benefits under the Texas Workmen's Compensation Law. Texas Employers' Insurance Association, hereinafter referred to as "Texas Employers", initiated this lawsuit, seeking to set aside an award made by the Industrial Accident Board to Betty Jean Prasek, the widow of Robert John Prasek. Betty Jean Prasek filed a "cross-petition" seeking the recovery of survivor's death benefits. After a jury trial, the trial court rendered judgment on the verdict which among other things awarded Betty Jean Prasek statutory death benefits. Texas Employers appeals.

Mr. Prasek worked in oil fields practically all his life. At the time of his death, he was working for Harkins and Company ("Harkins") as a tool pusher. He was "on call" twenty-four hours per day, but was free to go home to sleep and eat. The company also provided a trailer house and, according to a Harkins' Vice President, a company employee could use the trailer house for eating and sleeping while on duty if the occasion demanded that the employee be physically present at the drill site during his usual hours for eating and sleeping. Mrs. Prasek testified that the trailer was kept stocked with food and that it was usual for Mr. Prasek to eat and even sleep there, especially when he was required to be at the well site around the clock during crucial drilling stages, as was the case at the time of the accident. Her testimony was not contradicted or disputed. At 9:00 P.M. on a Sunday evening around the end of March, 1975, Mr. Prasek left his home in Cuero, Texas to go to work at Rig No. 2 near Cuero, where Harkins was drilling a well for Kilroy and Company. He returned home for breakfast around 9:30 A.M. the following morning. Mrs. Prasek had Mondays off from her job as a restaurant waitress and cashier, and, as was customary on Mondays, she accompanied Mr. Prasek to the drilling site, after breakfast. On arrival that Monday morning around 10:30 A.M., Mr. Prasek went to the rig floor to supervise the setting of pipe, and Mrs. Prasek went to a trailer house on the rig site, where she embroidered and read a magazine.

Around 3:00 P.M., Mr. and Mrs. Prasek went to Cuero to have lunch and do some grocery shopping, after which they returned to the drill site. About 12:45 A.M., (the next morning) Mr. Prasek told Mrs. Prasek to prepare a meal because he and Hoot Wright, an employee of Kilroy, would be in to eat in about fifteen minutes. When Mr. Prasek and Wright came in to eat, Mrs. Prasek served them. She then went to the stove to get her own plate, and when she returned Mr. Prasek had collapsed. Hoot Wright and others tried to assist Mr. Prasek, but to no avail. Mr. Prasek was taken to the hospital at Cuero, where he died of aspiration of food.

The jury found that 1) Mr. Prasek received an injury on or about April 1, 1975; 2) that the injury was received in the course of his employment by Harkins; and 3) that the injury was the producing cause of Mr. Prasek's death.

Texas Employers brings forward twelve points of error. In point one, it is asserted that there is "no evidence" to support the jury's answer to Special Issue No. 2, wherein it was found that Mr. Prasek received an injury in the course of his employment. That finding is also attacked in point two on the ground that the evidence is (factually) insufficient to support the same. Texas Employers, in points three and four, contends that there is "no evidence" and (factually) "insufficient evidence" that Mr. Prasek's choking on a particle of food had to do with and originated in the work of his employer. In points five to eight, complaints are made that the trial court erred in rendering judgment for Mrs. Prasek because, as a matter of law: 1) there is no causal connection between Mr. Prasek's employment and his choking on a particle of food (point five); 2) the particle of food was not such a hazard within the scope of Mr. Prasek's employment as would allow recovery for the choking and resultant death of Mr. Prasek (point six); 3) the risk of choking on a particle of food was purely personal and was not a hazard peculiar to the employment of Mr. Prasek (point seven); and 4) Mr. Prasek's employment did not subject him to a greater hazard from choking on a particle of food than ordinarily applies to the general public (point eight).

Section 1 of Tex.Rev.Civ.Stat.Ann. art. 8309 (1967) provides with respect to the term "injury sustained in the course of employment" as follows:

"The term 'injury sustained in the course of employment,' as used in this Act, shall not include:

(1) An injury caused by an act of God, unless the employee is at the time engaged in the performance of duties that subject him to a greater hazard from an act of God responsible for the injury than ordinarily applies to the general public.

(2) An injury caused by an act of a third person intended to injure the employee because of reasons personal to him and not directed against him as an employee, or because of his employment.

(3) An injury received while in a state of intoxication.

(4) An injury caused by the employee's wilful intention and attempt to injure himself, or to unlawfully injure some other person, but shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere."

For a claimant to recover under our statute he must meet two requirements: (1) the injury must have occurred while the claimant was engaged in or about the furtherance of his employer's affairs or business and (2) the claimant must show that the injury was of a kind and character that had to do with and originated in the employer's work, trade, business or profession. *Texas Employers Insurance Association v. Page*, 553 S.W.2d 98 (Tex.Sup.1977); *Texas General Indemnity v. Bottom*, 365 S.W.2d 350 (Tex.Sup.1963).

In determining whether the injury originated out of claimant's employment, it is necessary to determine that there was a sufficient causal connection between the conditions under which his work was required to be performed and the resulting injury to him. Such an injury originates out of claimant's employment when it results from a risk or hazard which is necessarily or ordinarily or reasonably inherent or incident to the conduct of such work or business. *Texas Employers Insurance Association v. Page, supra; American General Ins. Co. v. Williams*, 149 Tex. 1, 227 S.W.2d 788 (1950); *Lumberman's Reciprocal Ass'n v. Behnken*, 112 Tex. 103, 246 S.W. 72 (1922); *Southern Surety Co. v. Shook*, 44 S.W.2d 425 (Tex.Civ.App.—Eastland 1931, writ ref'd). The fact that an employee is injured while at work or on the premises of the employer does not in and of itself make the injury compensable. *Liberty Mutual Insurance Co. v. Hopkins*, 422 S.W.2d 203 (Tex.Civ.App.—Beaumont 1967, writ ref'd n. r. e.).

The most serious challenge made to the judgment of the trial court is that Mr. Prasek's injury contained no element of causative danger peculiar to the work involved. 62 Tex.Jur.2d Workmen's Compensation, § 76 (1965). In that regard we note that an employee need not have been engaged in the discharge of any specific duty incident to his employment; rather an employee in the course of his employment may perform acts of a personal nature that a person might reasonably do for his health and comfort, such as quenching thirst or relieving hunger. Such acts are considered as incidental to the employee's service and the injuries sustained while doing so arise in the course of employment and are compensable. *Texas Employers' Ins. Ass'n v. Anderson*, 125 S.W.2d 674 (Tex.Civ.App.—Dallas 1939, writ ref'd); *Insurance Company of North America v. Estep*, 501 S.W.2d 352 (Tex.Civ.App.—Amarillo 1973, writ ref'd n. r. e.); *Texas Employers' Insurance Ass'n v. Davidson*, 295 S.W.2d 482 (Tex.Civ. App.—Fort Worth 1956, writ ref'd n. r. e.); 62 Tex.Jur.2d, Workmen's Compensation, § 92 (1965). Also, the fact that an employee performs an act in an improper manner does not preclude recovery under compensation laws. Whether an employee sustained an injury while in the course and scope of his employment is to be determined on the peculiar facts of each case and is usually a question of fact for the jury. *Insurance Company of North America v. Kneten*, 430 S.W.2d 565 (Tex.Civ.App.—Waco 1968), aff'd, 440 S.W.2d 52 (Tex.Sup.1969); *Carter v. Travelers Ins. Co.*, 132 Tex. 288, 120 S.W.2d 581 (1938). The Compensation Act should be liberally construed in favor of the employee. *Hargrove v. Trinity Universal Ins. Co.*, 152 Tex. 243, 256 S.W.2d 73 (1953); *Texas Employers Insurance Association v. Loesch*, 538 S.W.2d 435 (Tex.Civ.App.—Waco 1976, writ ref'd n. r. e.).

We hold that the injury suffered by Mr. Prasek was incidental to and originated in his employment. While the record does not disclose whether or not the employer furnished the meal, and particularly the steak on which Mr. Prasek choked to death, it is nevertheless apparent that the employer provided the facilities on its premises whereby employees who were on call could attend to their personal necessities while on the job. The employer by providing employees such as Mr. Prasek a place to sleep and prepare meals invited their presence. The fact that Mr. Prasek was at the drill site at midnight supports an inference that the drilling had reached a very critical stage and that his presence was required. The record clearly discloses that the house trailer was to serve no purpose other than the business interest of Harkins and the convenience of its employees.

It was within the province of the jury to conclude that it was the employer's work which brought Mr. Prasek to the place where the injury occurred. We have reviewed the record and weighed the evidence according to the standards laid down by our Supreme Court. We find there is ample evidence that Mr. Prasek, at the place of injury and time he sat down to eat his meal, was then and there engaged in an act incident to his employment; that is, the act of eating his meal at the trailer house was connected with the work he was employed to do for his employer. *Goodyear Aircraft Corporation v. Industrial Commission*, 62 Ariz. 398, 158 P.2d 511 (1945); *St. Alexandre v. Texas Co.*, 28 So.2d 385 (La.Ct.App. 1946); *Campbell v. Liberty Mutual Insurance Company*, 378 S.W.2d 354 (Tex.Civ. App.—Eastland 1964, writ ref'd n. r. e.); *Southern Surety Co. v. Shook, supra*. The cases dealing with idiopathic events, upon which Texas Employers relies, are not applicable to this case since Mr. Prasek was under no preexisting condition. Choking on a particle of food does not constitute an act of God.

There is no dispute that Mr. Prasek was engaged in or about the furtherance of his employer's work at the time of the injury. There is ample evidence which shows that the injury "originated in" or "had to do with" the employer's work. We find that the evidence is sufficient to meet "the two-prong course of employment" test. See *Texas General Indemnity v. Bottom, supra; Texas Employers Insurance Association v.*

*Page,* supra. Points one to eight, both inclusive, are overruled.

In connection with the submission of Special Issue No. 2, which inquired as to whether or not Mr. Prasek suffered an injury in the course of his employment, which was answered in the affirmative, the following instructions, over Texas Employers' objections, were set out in the court's charge:

"'Injury in the course of employment' means any injury having to do with and originating in the work, business, trade, or profession of the employer, received by an employee while engaged in or about the furtherance of the affairs or business of his employer, whether upon the employer's premises or elsewhere.

In this connection you are instructed that an act at the place or area of employment necessary to the health, comfort, and convenience of an employee while within working hours, during a lunch period, or while preparing to begin work or leave the premises, is not a departure from the course of employment."

 Texas Employers, in points nine, ten, eleven and twelve, asserts that the second instruction given to the jury in regard to Special Issue No. 2 was misleading; that it shifted the burden of proof; that it constituted a comment on the weight of the evidence; and that it precluded submission of an essential element to the jury. We do not agree. When both instructions are read together, it is apparent that the second merely explains the first; it simply instructs the jury that the mere fact that the employee, at the time of injury, is engaged in a personal activity, such as eating, does not in and of itself constitute a departure from the course of employment, so long as the requisites of the first instruction are not. The second instruction was not misleading; it did not shift the burden of proof; it was not a comment on the evidence; it did not preclude the submission of an essential element to the jury. We do not find the instruction to be so defective as to result in the rendition of an improper judgment. See *Texas Employers' Insurance Association v. Davidson,* 295 S.W.2d 482, 484–85 (Tex.Civ.App.—Fort Worth 1956, writ ref'd n. r. e.); *Texas Pattern Jury Charges,* Vol. 2, § 21.31 (1970). See also *Fritzmeier v. Texas Employers' Ins. Ass'n,* 131 Tex. 165, 114 S.W.2d 236, 239 (Tex.Com.App. 1938, opinion adopted) wherein the court noted that "'originating in the work, business, trade or profession of an employer'" was not a legal term requiring definition. Points nine, ten, eleven and twelve are overruled.

The judgment of the trial court is AFFIRMED.