**EMPLOYERS' CASUALTY COMPANY, Successor In Interest to Texas Employers' Insurance Association, Appellant,**

**v.**

**Wanda BRATCHER, Qualified Community Survivor of the Estate of Stacy Lee Bratcher, Deceased and as Next Friend of Scott Stacy Bratcher, a minor, Appellee.**

No. 08–91–00173–CV.

Court of Appeals of Texas, El Paso.

Jan. 15, 1992.

Rehearing Overruled Feb. 12, 1992.

Julia E. Vaughan, Terry Rhoads, Cotton, Bledsoe, Tighe & Dawson, Midland, for appellant.

Abner Burnett, Nancy Barbour, Warren Burnett, Inc., Odessa, for appellee.

Before OSBORN, C.J., and WOODARD and KOEHLER, JJ.

## OPINION

OSBORN, Chief Justice.

This appeal is from a summary judgment awarding workers' compensation benefits for the death of a toolpusher based upon the personal convenience doctrine. We reverse and render.

### Facts

Stacy Lee Bratcher was employed as a toolpusher for Cherokee Drilling & Development Corporation. On the day he died, he drove to Midland to buy supplies for a drilling rig and went by the Cherokee offices. He returned to the drilling site before noon and told a member of the crew that he had not slept much the past few days and that he was going to the drilling company house trailer and take a nap. One of the roughnecks unloaded the supplies from his vehicle. About 2:30 p.m., a member of the crew went to the trailer to

awake Mr. Bratcher and returned to the rig and reported that he was already awake. Shortly thereafter when a Phillips Petroleum Company employee arrived at the drilling site, the same crew member went to the trailer and found that Mr. Bratcher had collapsed. It appeared he was using the bathroom and that he fell across the edge of the bathtub. His underwear was around his ankles and he had just completed a bowel movement. Mr. Bratcher was moved into a bedroom and efforts at resuscitation were not successful.

Suit was filed by Mr. Bratcher's widow and a minor son seeking death benefits for an injury alleged to have been sustained in the course of employment. Both the survivors and the carrier filed motions for summary judgment. The court granted the motion filed by the survivors and then held a hearing on matters not addressed in the summary judgment motion as to a lump sum payment to the survivors and their attorney. In response to a request of the carrier, the court filed findings of fact and conclusions of law which relate primarily to the lump sum award.

By three points of error, the Appellant contends that the trial court (1) erred in granting the Appellee's motion for summary judgment; (2) erred in denying Appellant's motion for summary judgment; and (3) erred in awarding unaccrued death benefits in a lump sum rather than in weekly installments.

The standards for review are well established and in passing on the first two points of error, we must apply the following rules:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Company, Inc.,* 690 S.W.2d 546 (Tex.1985); *Montgomery v. Kennedy,* 669 S.W.2d 309 (Tex.1984).

## Sufficiency of Evidence

The evidence upon which the summary judgment was based included the affidavit of Dr. Christopher L. Hall who performed the autopsy of Mr. Bratcher. He stated: "While fatal subarachnoid hemorrhage often occurs spontaneously in patients with berry aneurysms, the predisposing event may have been an increase in intracranial pressure that occurs at time of voiding." He concluded that the "manner of death was natural, rather than work-related." Also attached to the motion for summary judgment was the affidavit of Dr. Linda E. Norton. She stated: "In my opinion the cause of death in this case is a ruptured berry aneurysm in a blood vessel at the base of the brain. These aneurysms are believed to result from either a congenital and/or acquired weakness in the vessel wall. While exertion is not required for aneurysmal rupture, it is most often associated.... In Mr. Bratcher's case the most likely precipitating cause for rupture of the aneurysm was straining during defecation."

While we conclude that this evidence could raise a fact issue as to the precipitating cause for the rupture of the aneurysm, we do not view it is so definite and clear as to establish the issue as a matter of law. If such a hemorrhage often occurs spontaneously, and may have in this case, the issue is not settled as a matter of law, particularly when the one doctor said "the most likely" cause for the rupture was the strain while using the bathroom. We sustain Point of Error No. One.

## Accidental Injury

The courts of this state have recognized that the Workers' Compensation Act was not intended to provide health insurance, but was designed to provide compensation for incapacity flowing from an accidental personal injury. *Olson v. Hartford Accident and Indemnity Company,* 477

S.W.2d 859 (Tex.1972); *Texas Employers' Insurance Association v. Eskue*, 574 S.W.2d 814 (Tex.Civ.App.—El Paso 1978, no writ).

### Personal Comfort Doctrine

■ The personal comfort doctrine is set forth in *Larson's Workmen's Compensation Law*, Vol. 1A, § 21.00 (1990) as follows:

> Employees who, within the time and space limits of their employment, engage in acts which minister to personal comfort do not thereby leave the course of employment, unless the extent of the departure is so great that an intent to abandon the job temporarily may be inferred, or unless, in some jurisdictions, the method chosen is so unusual and unreasonable that the conduct cannot be considered an incident of the employment.

The author of that text states in § 21.53 that accidents occurring while an employee is on his way to or from toilet facilities, or while he is engaged in relieving himself, arise within the course of employment.

The courts of this state have recognized and applied the personal comfort doctrine in making a determination as to whether an injury was sustained in the course of employment. In *Yeldell v. Holiday Hills Retirement and Nursing Center, Inc.*, 701 S.W.2d 243 (Tex.1985), an employee, while at her duty station, had a telephone cord become entangled with a coffee urn that overturned and spilled hot coffee on her. She had just completed a telephone call to her daughter. In holding that the injury was sustained in the course of her employment, the Court said:

> An employee need not have been engaged in the discharge of any specific duty incident to his employment; rather an employee in the course of his employment may perform acts of a personal nature that a person might reasonably do for his health and comfort, such as quenching thirst or relieving hunger; such acts are considered incidental to the employee's service and the injuries sustained while doing so arise in the course

and scope of his employment and are thus compensable.

*Id.* at 245.

In the *Yeldell* opinion, the Court relied upon the decision in *Texas Employers' Insurance Association v. Prasek*, 569 S.W.2d 545 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). In the *Prasek* case, the employee left the drilling rig to which he was assigned and went to a trailer house to eat dinner. He choked on some food and died. His death was held to have been sustained during the course of his employment. The Court noted in its opinion that the employer provided the facilities whereby employees who were on call could attend to their personal necessities while on the job. The same is true in this case. It certainly is common knowledge in this state that toolpushers are required to be available to supervise operations as long as the rig is operating, and a person who is on call twenty-four hours a day must have some time to eat, sleep and go to the bathroom.

### Positional Risk or "But For" Test

■ Thus, we conclude that Mr. Bratcher did not go outside the scope of his employment when he entered the bathroom of the trailer provided by his employer and there would be compensation coverage, unless application be given to the positional risk test, sometimes referred to as the "but for" test. That test focuses the court's inquiry upon whether the injury would have occurred if the conditions and obligations of employment had not placed the claimant in harm's way. See *Walters v. American States Insurance Company*, 654 S.W.2d 423 (Tex.1983) and *North River Insurance Company v. Purdy*, 733 S.W.2d 630 (Tex.App.—San Antonio 1987, no writ). This doctrine was noted in *Walters* but never mentioned in *Prasek*. In *Prasek*, the Court did note that Mr. Prasek was under no preexisting condition. Mr. Bratcher did have a preexisting aneurysm. The test is perhaps best illustrated by the concurring opinion of Judge Johnson in *Otto v. Moak Chevrolet, Inc.*, 36 Or.App. 149, 583 P.2d 594 (1978). In that case, it was alleged that the claimant went to the women's rest-

room, relieved herself, and while she was pulling her underwear and slacks back up in an ordinary manner, her back went out. The majority opinion acknowledged that Oregon gives effect to the personal comfort doctrine, but said there was no causal connection between the injury and the employment. The concurring opinion said:

> Here the activity of going to the bathroom was 'incidental' to the employment, but the injury was not a 'risk of * * * the employment.' *Jordan v. Western Electric, supra,* 1 Or.App. [441] at 443, 463 P.2d [598] at 600 [ (1970) ]. The act that caused the injury was claimant's personal movements performed while using the toilet—a risk that claimant confronted irrespective of her employment.

*Otto,* 583 P.2d at 598. See also *Larson's Workmen's Compensation Law,* Vol. 1A, § 21.53, n. 13.1 which cites *Sacks v. Industrial Commission,* 13 Ariz.App. 83, 474 P.2d 442 (1970); *Southern Bell Telephone and Telegraph Company v. McCook,* 355 So.2d 1166 (Fla.1977) and the *Otto* case as holding that injuries connected with the use of the toilet, while having occurred in the course of employment, did not arise out of the employment. In the *McCook* case, the Court said:

> We cannot ... convert the workmen's compensation statute into a mandatory general health insurance policy which does not limit the burden on industry to those ailments produced even remotely by the hazards of industry.

*McCook,* 355 So.2d at 1169.

In the *Walters* case, the Court cited cases in which the courts had awarded compensation benefits on the positional risk theory because the employment brought the employee in contact with the risk that it in fact caused his injuries. In that case, the employee (Justice) was found shot to death after leaving on a trip with his employer (Lamport) to meet a potential client. The Court noted that *"[b]ut for Lamport's order that Justice accompany him to the business conference, Justice would not have left town with Lamport on the Saturday of the deaths [emphasis added]."* *Walters,* 654 S.W.2d at 427. Likewise in *Yel-*

*dell,* but for her employment, the claimant would never have had contact with the cord on the telephone and the resulting burns from the coffee pot.

In this case, the aneurysm could have burst at any time. The injury did not arise but for him being at work, rather it was due to a personal defect which proved to be fatal from a strain totally unrelated to the deceased's employment. It cannot be said that but for Mr. Bratcher being assigned to a rig as a toolpusher he would not have gone to the bathroom on the occasion in question. Instead the risk was one Mr. Bratcher would have confronted irrespective of any type of employment. In the *Walters* case, Mr. Justice left town with his boss only because of his employment. Mr. Bratcher did not go to the bathroom only because of his employment. We sustain Point of Error No. Two. Point of Error No. Three is moot.

The judgment of the trial court is reversed and judgment rendered that the Appellee have and recover nothing from the Appellant.